[File No. 6836]

A. E. ROETHKE, Respondent, v. NORTH DAKOTA TAXPAY-
ERS ASSOCIATION, Inc., a Corporation, John Conrad, John
Dawson, R. D. Ward, W. H. Ladell, Bennett Nerby, Oscar Herum,
C. A. Williams, J. M. Cathcart, J. B. McWethy, Cass County
Taxpayers Association, John Runck, C. A. Williams, W. R. Kyser,
T. F. Powers, R. S. Lewis, William Veitch, J. M. Cathcart, and
Fryne L. Williams, Appellants.

(10 NW(2d) 738)

Opinion filed August 14, 1943.

*H. C. Young* and *Nilles, Oehlert & Nilles,* for appellants.

*Francis Murphy,* for respondent.

Burr, J. This is an appeal from an order overruling a demurrer to the complaint, the defendants specifying the complaint fails "to state facts sufficient to constitute a cause of action."

The complaint alleges: The plaintiff was the sheriff of Cass County, and otherwise shows his position in the community and the state. It sets forth the character of the Taxpayers Association, and connects the other defendants with the situation set forth in the complaint. The action is to recover damages for an alleged libel and it is claimed that all of the defendants "and each of them, wishing, intending, and contriving to injure the plaintiff in his good name and fame with the people of the State of North Dakota, Cass County, and elsewhere, intentionally, wilfully, maliciously printed, published and caused to be printed and published a certain photo-lithed document called an 'Audit-Survey' of and concerning the plaintiff as an individual, and as a public officer, which contained certain false, malicious, defamatory, and unprivileged statements and communications, in words, figures, and of the tenure following to-wit: 'Audit-Survey' " (setting out an alleged Audit-Survey).

The plaintiff then charges: "That in said purported publication, document, or photo-lithed instrument the defendants, and each of them, *among other things,* said of and concerning this plaintiff" there was "mileage charged by Sheriff for arrests which City of Fargo police records show were made by City Police and turned over to the Sheriff," and that he *"Charged 1,758 miles for arrest of persons shown on the police records as arrested by city police and turned over to Sheriff. All charges for meals are for full days, so all prisoners must have been apprehended and placed in the county jail before breakfast each morning and discharged after dinner in the evening,"* supplementing this with some six pages of the record wherein items are set forth, and showing

the charges were said to have been made against Cass county. The complaint further alleges that the defendants, in this audit-survey, set forth that the plaintiff " 'Apparently charged for 119 extra days at .75¢ per day—$89.25,' meaning or intending thereby to charge and state that the above named plaintiff, A. E. Roethke, as Sheriff of Cass County, North Dakota, had falsely and corruptly charged Cass County, North Dakota, as such sheriff, 1,758 miles for the arrest of persons whom he, as such sheriff, did not arrest, and that such charge or charges against such county for such arrests was contrary to law, and that thereby the plaintiff had corruptly and feloniously obtained public moneys, and meaning and intending to charge thereby, and charging thereby that the said plaintiff as such sheriff, had charged to Cass County, North Dakota, and received payment from said Cass County for meals for prisoners which had not been served, thereby stating and charging that the above named plaintiff had corruptly and feloniously received from said County public moneys to which he was not entitled thereby charging the above named plaintiff with malfeasance and corruption in office, and with the commission of crime; and that said charges were so understood by the public."

There are further charges of a similar import all of which the plaintiff says were made by the defendants with intent to injure him and that they were "intentionally, wilfully, maliciously printed, published, and caused to be printed" about him with purpose to injure, the plaintiff "in his good name and fame as a citizen and public officer."

The defendants moved the court to require the plaintiff to make the complaint "more definite and certain, and to furnish and set forth in the Bill of Particulars, the particular language in haec verba alleged by the plaintiff to be printed in the Audit-Survey described in the complaint and upon which said plaintiff relies to establish the following allegations contained in the plaintiff's complaint."

The plaintiff served a bill of particulars, but we need not set it forth as separate from the complaint. However, in determining the validity of the demurrer, we review the complaint and bill of particulars as an entity.

The trial court overruled the demurrer and defendants appeal.

Because of the earnestness with which the appellants present their views, we call attention to the functions of a demurrer. A demurrer

does not reach such matters as uncertainty, when sufficient facts are stated (Weber v. Lewis, 19 ND 473, 126 NW 105, 34 LRA(NS) 364) nor even where such facts are stated defectively, LaMoure v. Lasell, 26 ND 638, 145 NW 577. Neither does the demurrer reach insufficiency which pertains to form only. Cammack Piano Co. v. Western Surety Co. 56 ND 262, 216 NW 561. The demurrer deals with the substance rather than the form. McCurdy v. Hughes, 61 ND 235, 237 NW 748. Even where a cause of action contains statements of different items and the sufficiency of some of these is disputed as not stating a cause of action, the demurrer cannot be sustained, for "unless all are bad the demurrer should be overruled." King v. Stark County, 67 ND 260, 263, 271 NW 771, 773. With respect to the alleged allegation of facts set forth in the complaint it is commonplace that the demurrer admits the truth of all issuable relevant material facts that are pleaded, including the falsity, publication, and the malice alleged, in an action for libel. Englund v. Townley, 43 ND 118, 174 NW 755. See also Federal Land Bank v. Koslofsky, 67 ND 322, 327, 271 NW 907, 908.

The complaint sets forth numerous quotations from this audit and alleges the defendants meant and intended to charge he had attempted to obtain public money corruptly. Such would amount to a charge of malfeasance and corruption in office.

The complaint is voluminous and the argument in appellant's brief extensive. Obviously. we cannot set forth every item. The gist of the whole complaint is that the defendants caused this audit-survey to be made and therein set forth intentionally and falsely a large number of alleged incidents and facts wherein they stated the plaintiff, as the sheriff, filed false bills with the county and charged for meals that were never furnished and for miles never traveled. Where an isolated statement seemed to appear harmless on its face, an innuendo was set forth showing how this statement in connection with the whole audit was intended to imply corrupt action on the part of the sheriff and this was done maliciously and intentionally by the defendants.

There are a very large number of the statements made in the audit-survey which are thus attacked by the sheriff. All are stigmatized as being false and knowingly and maliciously made with the purpose of injuring him as a citizen and a public official.

It is urged that the complaint does not show whether the Cass coun-

ty records are right "or those of the Fargo City Police," and that the audit is a comment upon certain records and that it calls attention to "certain obvious facts which appear on these records."

They urge that this so-called audit-survey calls attention to the fact that the records of the county of Cass and of the city of Fargo show certain things, and "the complaint does not charge that the Audit-Survey does not truly set forth the facts which the records disclose." But the audit-survey as set forth in the complaint does not purport to be a résumé of county records or police records, or a true representation thereof, and the audit, as set forth in the complaint, does not so state.

Defendants further argue that the complaint does not show the sheriff made any records nor does it show that the records of the police force may not have been the erroneous recordings of an employee and further that the Audit-Survey nowhere states that the items referred to were illegal. They say further that the audit does not "impute any illegal action" but merely draws the natural inferences "that either the records were carelessly or inaccurately made or more economy could be practised."

It is argued that the audit does not say that plaintiff received the money but merely that he charged the county, but this in itself clearly implies a criminal act on the part of the sheriff.

The argument of defendants assumes much regarding the preparation of this Audit-Survey, the sources from which it was drawn, and the purpose intended to be served. None of this appears in the complaint.

Defendants further state that if the alleged libelous language be libelous per quod, "yet the complaint does not state a cause of action for the reason that there are no allegations of special damages."

Defendants in their brief state that the publication was made in good faith and was a comment upon the actions of a public official and therefore quasi privileged if not absolutely privileged; that this publibelous per quod, "yet the complaint does not state a cause of action criticism of a public officer on a matter of public concern and therefore is not actionable;" but this is a matter of defense.

Enough of the comment is set forth to indicate the issues arising on the demurrer.

If a libel is properly pleaded it is not a privileged communication, so far as the conditions of this case are concerned, unless it is made "without malice to a person interested therein by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information.

"By a fair and true report without malice of a judicial, legislative or other public official proceeding, or of anything said in the course thereof." Comp. Laws, § 4354, Subds. 3 and 4.

There is nothing in the complaint showing any relationship to the public on the part of the defendants which would bring it within the catagory of a privileged communication and the complaint specifically negatives honest belief or accuracy—in fact, charges that knowingly and intentionally the defendants made these false statements with the purpose of injuring the plaintiff. It is true that the word "knowingly" may not be used but this is the clear implication of the complaint and if it is indefinite the remedy is not by demurrer.

To show any of these situations set forth in defendants' brief is a matter of defense. They are not reached by demurrer unless they appear on the face of the complaint, which they do not. The complaint charges that this report was false, unprivileged, maliciously made, and printed by the defendants with the intention, in doing so, to injure him and his good name and as a public official. The complaint alleges that by thus doing the plaintiff was damaged in his good name and credit in the community and as a public official and "it caused him great humiliation and disgrace and by reason of all that was done by the defendants he was damaged in the sum of $100,000."

Defendants lay much stress upon the decision this court rendered in Ellsworth v. Martindale-Hubbell Law Directory, 66 ND 578, 268 NW 400. This case goes quite exhaustively into the requirements of a complaint setting forth libel. The complaint in the present case sets forth certain statements made in this survey which on their face show that the sheriff charged for miles of travel in arresting persons he did not arrest, for meals never served to prisoners, and for arrests never made. The complaint states that these statements are false and were made falsely, maliciously, and with the intent to injure him. If that be

true, and the truth of the complaint is admitted, it is a libel per se. There are other allegatons setting forth matters which on their face would not be libelous per se. To these the innuendo is attached. Whether these are sufficiently pleaded is not material here as part of the complaint is good against a demurrer. In this Ellsworth Case, supra, we show when special damages must be pleaded; but if the complaint or any portion thereof is libelous per se, general damages are recoverable even though special damages may not be recoverable because of defective plea.

The trial court was correct in overruling the demurrer, and therefore the order is affirmed.

MORRIS, Ch. J., and CHRISTIANSON, BURKE, and NUESSLE, JJ., concur.